Not for Publication

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

---

MOISES ECHEVARRIA,

                    **Plaintiff,**

        v.

COUNTY OF BERGEN, *et al.*,

                   **Defendants.**

**Civil Action No.: 23-3002 (ES) (CLW)**

**OPINION**

---

**SALAS, DISTRICT JUDGE**

Plaintiff Moises Echevarria is proceeding *pro se* with a civil rights complaint pursuant to 42 U.S.C. § 1983 ("Section 1983") against Defendants.[1]  (D.E. No. 1 ("Complaint" or "Compl.")). The Court has screened the Complaint pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(a) and 42 U.S.C. § 1997e(c) to determine whether the Court should dismiss it, as frivolous or malicious, for failure to state a claim upon which the Court may grant relief, or because it seeks monetary relief from a defendant who is immune from suit.  For the reasons set forth below, the Court dismisses the Complaint in its entirety.  Plaintiff's Occupational Safety and Health Act ("OSHA") claims against all Defendants and the Section 1983 claims against defendants Bergen County Department of Correction, Bergen County Adult Corrections Center, and the New Jersey

---

[1] "Defendants" herein refers to defendants County of Bergen, Bergen County Department of Correction, Bergen County Adult Corrections Center, Bergen County Adult Corrections Center Director/Warden Grella, New Jersey Department of Corrections, Aramark Corp., Aramark Dietician Julia Dunnigan, Sgt. Turre, Lt. Allegretta, and fictitious defendants Aramark Food Service Director 1-5, ABC Sheriffs Officer, DEF County Guards, GHI Public Entities 1-5, JKJ Private Entities 1-5, and John/Jane Does 1-10.  The Court refers to Warden Grella, Aramark Food Service Director 1-5, Dietician Dunnigan, Sgt. Turre, Lt. Allegretta, ABC Sheriffs Officer, DEF County Guards, and John/Jane Does 1-10 as the "Individual Defendants."  It refers to the County of Bergen, Aramark Corp., GHI Public Entities 1-5, and JKJ Private Entities 1-5 as the "County/Contractor Defendants."

Department of Corrections ("NJDOC") are **DISMISSED** *with prejudice*. Plaintiff's Section 1983 claims against the remaining defendants are **DISMISSED** *without prejudice*.

## I.    BACKGROUND

Plaintiff was a pretrial detainee at Bergen County Jail at the time he filed his Complaint. (*See* D.E. No. 1-1). Plaintiff alleges that "the following information is to properly state my claim against Aramark Corp.; Aramark Food Service Director; Aramark Dietician Julia[] Dunnigan; Sgt. Turre; Lt. Allegretta; Warden Grella; County of Bergen; and the Bergen County Sheriff's[2] for continuously violating my rights without correct[ing] the behavior" after having "full working knowledge of this by the exhaustion of the grievance structure, proven experience and constant pull ups to make them properly aware of such violations." (Compl. at 2). He specifically alleges that "[t]he vermin had eaten through a bag into the bread we eat and I showed the [bag] to [the] C/O's and Sgt. on duty." (*Id.*).

Furthermore, Plaintiff claims that, as a Muslim, he cannot eat food that is chemically altered. (*Id.*). However, he alleges he constantly observed the disrespectful manner in which trays were placed on the floor without any correction. (*Id.* at 4). Plaintiff further alleges "the food is not Halal," and it was being exposed to harmful chemicals and bacteria and made toxic because it gets served cold. (*Id.*). He also alleges "numerous" OSHA code violations observed in his inspections "as well as in the community." (*Id.*); *see also* 29 U.S.C. §§ 651–78.

According to Plaintiff, he must be treated equally and receive the proper nutritional value in his meals, and he alleges that the failure to supplement the meals with equal nutritional value was recorded in several ways. (Compl. at 3). Specifically, the alleged violations were observed by the officers on duty and brought to their attention by Plaintiff, were recorded in the log book,

---

[2]    Although included in this allegation, it does not appear Plaintiff named this entity as a defendant in his Complaint.

exhausted through the grievance structure, and recorded by the surveillance cameras. (*Id.*). "This failure to abide by rules and regulations is also a way to expose factual information that needs further inspection." (*Id.*). Plaintiff alleges that the Aramark dietician's menu provided specific guidelines that would be met in food preparation but that "this menu was not even close to being followed." (*Id.*).

Alleging that he is exercising his freedom of speech by "only stating factual information based on constitutional law to protect human rights," Plaintiff seeks monetary compensation ($500,000) for "the deprivation of character and freedom to practice my religious beliefs in a facility." (*Id.* at 4).

Plaintiff's Complaint was received and filed on May 31, 2023. (Compl.). According to an accompanying letter, he was scheduled to be released from the Bergen County Jail on May 30, 2023. (D.E. No. 1-2 at 1). Based on his subsequent filings with this Court, Plaintiff is no longer incarcerated at the Bergen County Jail. (*See* D.E. Nos. 6–7). On August 29, 2023, the Honorable Kevin McNulty, U.S.D.J, entered an order granting Plaintiff's application to proceed *in forma pauperis* and directing the Clerk of Court to file the Complaint. (D.E. No. 3 at 1). Judge McNulty stated that the Complaint would be screened in due course. (*Id.* (citing 28 U.S.C. § 1915A)). On November 29, 2023, this case was reassigned to the Undersigned. (D.E. No. 4). Plaintiff filed a letter on September 9, 2024, inquiring about the status of his case. (D.E. No. 6).

## II.    LEGAL STANDARD

District courts must review complaints in civil actions in which a prisoner or pretrial detainee is proceeding *in forma pauperis, see* 28 U.S.C. § 1915(e)(2)(B), seeks redress against a governmental employee or entity, *see id.* § 1915A(a), or brings an action with respect to prison conditions, *see* 42 U.S.C. § 1997e(c). District courts may *sua sponte* dismiss any claim that is

frivolous, is malicious, fails to state a claim upon which the court may grant relief, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b); 42 U.S.C. § 1997e(c)(1).

The legal standard for dismissing a complaint for failure to state a claim pursuant to §§ 1915(e)(2)(B), 1915A(a), or 1997e(c) is the same as that for dismissing a complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012); *Courteau v. United States*, 287 F. App'x 159, 162 (3d Cir. 2008); *Mitchell v. Dodrill*, 696 F. Supp. 2d 454, 471 (M.D. Pa. 2010). A court properly grants a motion to dismiss pursuant to Rule 12(b)(6) "if, accepting all well pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff, plaintiff is not entitled to relief." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (citing *Bartholomew v. Fischl,* 782 F.2d 1148, 1152 (3rd Cir.1986)).

To survive *sua sponte* screening for failure to state a claim, the complaint must allege "'sufficient factual matter' to show that the claim is facially plausible." *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citing *Ashcroft v. Iqbal*, 566 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the [alleged] misconduct." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). Under Federal Rule of Civil Procedure 8, a complaint's claims must be supported by "a short and plain statement . . . showing that the pleader is entitled to relief" and "a demand for the relief sought, which may include relief in the alternative or different types of relief." Fed. R. Civ. P. 8(a)(2)–(3). "Each allegation must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1). Rule 8 requires that the complaint set forth the plaintiff's claims with enough specificity to "give the defendant fair notice

of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (citations omitted); *see also Dist. Council 47 v. Bradley*, 795 F.2d 310, 315 (3d Cir. 1986) (stating that the complaint must contain sufficient facts to put the defendants on notice permitting them to frame an answer to the plaintiff's allegations). A complaint that "offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do,'" and a complaint will not "suffice" if it provides only "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. 555, 557). While courts liberally construe *pro se* pleadings, *pro se* litigants still are required to allege sufficient facts to support a claim and to comply with the pleading requirements of Rule 8. *See Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013); *Thakar v. Tan*, 372 F. App'x 325, 328 (3d Cir. 2010).

## III.    DISCUSSION

Here, the Court construes Plaintiff's allegations in the Complaint as asserting claims under 42 U.S.C. § 1983 ("Section 1983") and the Due Process and Equal Protection Clauses of the Fourteenth Amendment for being served tainted, toxic, nutritionally inadequate, and non-Halal food. The Complaint is also read as asserting a Section 1983 claim under the Free Exercise Clause of the First Amendment based on the alleged denial of unaltered Halal food.[3] Plaintiff also alleges "numerous (OSHA) Code violations." (Compl. at 4). For the reasons stated below, the Court **DISMISSES** *with prejudice* Plaintiff's OSHA claims against all Defendants and his Section 1983 constitutional claims against defendants Bergen County Department of Correction, Bergen County

---

[3]     The Court does not construe the Complaint in its current form as asserting a claim under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. §§ 2000cc to 2000cc-5, as it does not seek the traditional forms of relief available under the statute, i.e., injunctive or declaratory relief. *See Payne v. Doe*, 636 F. App'x 120, 125 (3d Cir. 2016) (noting "the only relief potentially available to [plaintiff] for his RLUIPA claims is injunctive or declaratory"); *Gittens v. Pepper*, No. 23-17721, 2024 WL 4799804, at *5 (D.N.J. Nov. 14, 2024) (stating that RLUIPA does not generally permit monetary damages).

Adult Corrections Center, and NJDOC, and the Court **DISMISSES** *without prejudice* Plaintiff's Section 1983 claims against the other defendants.

### A.    OSHA Code Violations

"It is well-settled that OSHA does not create a private right of action." *Naderi v. Concentra Health Servs., Inc.*, No. 21-18958, 2024 WL 2954181, at *5 (D.N.J. June 12, 2024) (quoting *Ries v. Nat'l R.R. Passenger Corp.*, 960 F.2d 1156, 1164–65 (3d Cir. 1992); *Dravo Corp. v. Occupational Safety & Health Rev. Comm'n*, 613 F.2d 1227, 1230 n.2 (3d Cir. 1980); *Kozar v. AT&T*, 923 F. Supp. 67, 69 (D.N.J. 1996)).   Accordingly, the Court **DISMISSES** *with prejudice* Plaintiff's OSHA claims against the Defendants.

### B.    Section 1983 Claims

#### i.    Defendants Not Amendable to Suit Under Section 1983

Section 1983 imposes liability on "[e]very *person* who, under color of any statute, ordinance, regulation, custom, or usage of any State . . . subjects . . . any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights . . . secured by the Constitution and laws."  42 U.S.C. § 1983 (emphasis added).  Accordingly, to be liable under Section 1983, a defendant must be a "person" within the meaning of the statute. *See id.*  The Supreme Court has held that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).  Thus, a cause of action under Section 1983 "cannot be asserted against the state, its agencies, or its officials acting in their official capacities." *Landi v. Borough of Seaside Park*, No. 07-5319, 2009 WL 606141, at *6 (D.N.J. Mar. 9, 2009).

Although a municipality or local government constitutes a "person" within the meaning of Section 1983, *see Monell v. Dep't of Soc. Servs.*, 436 U.S. 658,  662–63 (1978), courts have held

that local police departments, county jails, and other county agencies are not separate entities subject to suit under Section 1983 because they are merely administrative arms of the municipality or local government, *see Mikhaeil v. Santos*, 646 F. App'x 158, 163 (3d Cir. 2016) (finding that the district court correctly determined that the Jersey City Police Department was not a proper party to a Section 1983 action).

Here, as defendant NJDOC constitutes a state agency, it is not a "person" within the meaning of Section 1983, and thus Plaintiff cannot assert a Section 1983 claim against it. *See Will*, 491 U.S. at 71; *Landi*, 2009 WL 606141, at *6. Similarly, defendants Bergen County Department of Correction and Bergen County Adult Corrections Center are likewise not subject to suit under Section 1983 because they are "merely administrative arms of the municipality or local government." *See Mikhaeil*, 646 F. App'x at 163.

Accordingly, the Court **DISMISSES** *with prejudice* Plaintiff's Section 1983 claims against defendants Bergen County Department of Correction, Bergen County Adult Corrections Center, and NJDOC.

### ii.       The Remaining Defendants

The remaining defendants are amendable to suit under Section 1983, but Plaintiff fails to plead adequate facts indicating that the Individual Defendants were personally involved in the alleged constitutional violations, nor that he was harmed by a municipal or corporate policy, custom, or practice established by the County/Contractor Defendants, or by their failure to train or supervise their employees.  In addition, he does not provide sufficient factual content to support a claim under the Due Process, Free Exercise, and Equal Protection Clauses for being served tainted, toxic, nutritionally inadequate, and "non-Halal" food.  Finally, Plaintiff's claims for compensatory damages are barred by statute because he fails to allege a prior physical injury.  Accordingly, for

the reasons stated below, the Court **DISMISSES** *without prejudice* the Section 1983 claims against the Individual Defendants and the County/Contractor Defendants.

### 1. Personal Involvement Requirement

A defendant in a Section 1983 civil rights action must have personal involvement in the alleged constitutional violation. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207–08 (3d Cir. 1988). Liability thereby requires a "showing of direct responsibility" by the named defendant and eschews any "theory of liability" in which defendants played "no affirmative part in depriving any[one] . . . of any constitutional rights." *Rizzo* v. *Goode*, 423 U.S. 362, 376–77 (1976). Accordingly, a plaintiff must plead that each defendant, through his or her own individual actions, violated the Constitution. *See Iqbal*, 556 U.S. at 676.

Given this personal involvement requirement, a defendant holding a supervisory position may not be held liable based solely on a vicarious theory of liability. *See Rode*, 845 F.3d at 222. "A supervisor's '[p]ersonal involvement may be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity.'" *McCoy v. Scott*, No. 23-21272, 2024 WL 3580662, at *2 (D.N.J. July 29, 2024) (quoting *Rode*, 845 F.2d at 1207). Knowledge, for these purposes, means "contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents." *C.H. ex. rel. Z.H. v. Oliva*, 226 F.3d 198, 202 (3d Cir. 2000) (quoting *Bonenberger v. Plymouth Twp.*, 132 F.3d 20, 25 (3d Cir. 1997)). "Alternatively, a plaintiff seeking to show personal involvement for a supervisor may plead facts which show that the alleged constitutional violation is the result of a policy, practice, or custom put into effect by the supervisor." *McCoy*, 2024 WL 3580662, at *2 (citing *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 583–85 (3d Cir. 2003)). A single incident is generally

8

insufficient to establish the existence of policy or custom. *See Reed v. Jersey City*, No. 21-3921, 2022 WL 1664621, at *7 (D.N.J. May 24, 2022).

Here, Plaintiff fails to plead a plausible claim that the Individual Defendants were personally involved in the alleged wrongs. On the contrary, the Complaint largely consists of conclusory "group pleadings" alleging that Defendants, or a subset of Defendants, collectively violated his constitutional rights. (*See generally* Compl.). Specifically, he "state[s] my claim against Aramark Corp.; Aramark Food Service Director; Sgt. Turre; Lt. Allegretta; Warden Grella; County of Bergen; and the Bergen County Sherriff's for continuously violating my rights without correction" after having received "full working knowledge" of the violations through "the exhaustion of the grievance structure, proven experience and constant pull ups to make them properly aware of such violations." (*Id.*at 2). "A plaintiff may not plead personal involvement by way of group pleading – *i.e.*, naming a litany of defendants all of whom held different positions and were presumably involved in different ways and alleging wrongs as to each member of this group of Defendants without specifically pleading how each was involved." *McCoy*, 2024 WL 3580662, at *3 (citing *Galicki v. New Jersey*, No. 14-169, 2015 WL 3970297, at *2 (D.N.J. June 29, 2024); *Falat v. Cnty. of Hunterdon*, No. 12-6804, 2013 WL 1163751, at *3 (D.N.J. Mar. 19, 2023)); *see also Cheng v. Byrd*, No. 23-5349, 2024 WL 3873945, at *2 (D.N.J. Aug. 20, 2024) ("A plaintiff cannot refer to all defendants, 'who occupied different positions and presumably had distinct roles in the alleged misconduct' without specifying '*which* defendants engaged in what wrongful conduct.'" (quoting *Falat*, 2013 WL 1163751, at *3)).

Here, the multiple Individual Defendants named by Plaintiff include the warden of the county jail; the food service director of the contractor retained by the county to provide such services to the inmates; a lieutenant; a sergeant; a dietician employed by the food services

contractor; and "fictitious" Sheriff's officers and guards.  Despite naming individual officials with presumably distinct responsibilities, he does not explain "*which* defendants engaged in what wrongful conduct," *Cheng*, 2024 WL 3873945, at *2.

At best, Plaintiff's Complaint includes some allegations referring to a specific individual, or at least a narrower group of individuals, by job title.  Plaintiff claims that: (i) he showed the bag of bread that had been eaten through by vermin to the unidentified "C/O's and Sgt. on duty"; (ii) "the violation of rights [i.e., equal treatment of receiving proper nutritional value] was a way that was observed by the [unidentified] officers on duty that through my inspection of the meals was brought to their awareness, recorded in the log book, exhausted through the grievance structure, and recorded by the surveillance cameras"; and (iii) "[t]he menu that the Aramark Dietician binded their name to was an official document stating that specific guidelines would be met when preparing food for the pre-trial detainee population," but this menu "was not even close to being followed."  (Compl. at 2–3).  However, these allegations do not reasonably indicate that nor how these Defendants were personally involved in the alleged unconstitutional conduct.  In fact, Plaintiff does not address the role, if any, that the sergeant and other correctional staff had in the process of preparing and serving food, or what they did or did not do after the bag of bread and other food-related issues were allegedly brought to their attention.  *See Kaucher v. Cnty. of Bucks*, 455 F.3d 418, 433 n.11 (3d Cir. 2006) (stating that failures to act generally cannot form the basis for a valid Section 1983 claim).  As to the dietician, Plaintiff alleges that she merely approved the menu.  Plaintiff does not claim that the menu itself was constitutionally inadequate; in fact, he challenges the failure to follow the menu's specifications.

As to the other Individual Defendants (i.e., the Aramark Food Service Director 1-5, Lt. Allegretta, Warden Gretta, and, to the extent they do not fall under the scope of his allegations

regarding the "C/O's and the Sgt. on duty" and "the officers on duty," Sgt. Turre, ABC Sheriffs Officer, DEF County Guards, and John/Jan Does 1-10), the Complaint likewise does not contain any non-conclusory allegations of their participation or actual knowledge and acquiescence. Plaintiff instead advances general "group pleading" allegations regarding the adequacy, toxicity, and appropriateness of the food he was served (i.e., a single incident in which vermin had eaten through a bag into the bread, lack of equal and adequate nutritional value, failure to follow the approved menu, rules, and OSHA requirements, placing food trays on the floor, exposing the food to harmful chemicals and bacteria by not keeping it hot, with the alterations making it toxic to eat because it gets served cold, and providing "food [that] is not Halal"). (Compl. at 2–4). But there are no non-conclusory allegations plausibly indicating that these Individual Defendants were directly involved in this conduct, knew of and acquiesced in the conduct, or put into effect a specific policy, practice, or custom that resulted in this conduct. Furthermore, while Plaintiff baldly refers to the exhaustion of the "grievance structure," "constant pull ups to make them [Defendants] aware of such violations," personal experience, log books, and surveillance camera footage, such conclusory allegations do not satisfy the "participation or knowledge and acquiescence" standard. *See McCoy*, 2024 WL 3580662, at *2 (stating that allegations of participation or actual knowledge and acquiescence must be made with appropriate particularity). "[T]hese types of allegations—i.e., that grievances were sent to a warden or other administrator— are generally insufficient to establish supervisory liability, absent a plausible allegation that the supervisor had contemporaneous knowledge of the incident and either directed or acquiesced in it." *Haar v. CFG Health Servs., LLC*, No. 22-7595, 2024 WL 4880349, at *7 (D.N.J. Nov. 25, 2024) (citing *Mincy v. Chmielsewski*, 508 F. App'x 99, 104 (3d Cir. 2013); *Butler v. Penschishen*, No. 22-3252, 2022 WL 4473590, at *4 (E.D. Pa. Sept. 26, 2022); *Brown v. Smith*, No. 18-00193,

2019 WL 24111749, at *5 (W.D. Pa. June 7, 2019)). Plaintiff does not plausibly allege contemporaneous knowledge and acquiescence by any of the Individual Defendants.

Accordingly, the Court concludes that Plaintiff does not plausibly allege that the Individual Defendants were personally involved in any constitutional violations and thus fails to state a Section 1983 claim with respect to the Individual Defendants.

### 2. *Monell* Liability

To state a plausible claim for relief against a municipality, such as the County of Bergen, "a plaintiff must plead facts showing that the municipal defendant caused the underlying constitutional violation through its issuance or adoption of a policy, practice or custom." *Echevarria v. Essex Cnty. Dep't of Corr.*, No. 20-498, 2020 WL 1243810, at *2 (D.N.J. Mar. 16, 2020) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978)). The municipal policy, practice, or custom must constitute the "moving force" behind the alleged violation. *See id.* (citing *City of Canton v. Harris*, 489 U.S. 378, 379 (1989)). A plaintiff must identify the challenged policy or custom, attribute it to the municipality itself, and show a causal link between execution of the policy and the injury suffered. *See Harley v. City of N.J. City*, No. 16-5135, 2017 WL 2779466, at *7–8 (D.N.J. June 27, 2017). A policy is made when an official possessing final policymaking authority issues a proclamation, policy, or edict. *See Fong v. City of Newark*, No. 22-7243, 2024 WL 5074763, at *3 (D.N.J. Oct. 12, 2024). "Custom 'can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law.'" *Id.* (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)).

Furthermore, a municipality's failure to train or supervise its employees and officers can result in an actionable violation under Section 1983. *See Reitz v. Cnty. of Bucks*, 125 F.3d 139,

12

145 (3d Cir. 1997). Generally, plaintiffs demonstrate deliberate indifference for failure to train claims by showing of a pattern of similar constitutional violations. *See Thomas v. Cumberland Cnty.*, 749 F.3d 217, 223 (3d Cir. 2014).

These standards also apply to alleged municipal contractors such as Aramark. *See Roman v. Cnty. of Chester*, No. 23-1662, 2024 WL 4844792, at *9 (E.D. Pa. Nov. 20, 2024); *Smart v. Aramark Inc.*, No. 14-3007, 2014 WL 2215972, at *1 (D.N.J. May 29, 2014).

As noted above, *see supra* Section III.B.ii.1, Plaintiff groups both "Aramark Corp." and the "County of Bergen" with a "litany" of other defendants and then baldly asserts without any further clarification that Defendants continuously violated his rights despite having known of the alleged violations through the grievance process, experience, and pull ups. (Compl. at 2); *McCoy*, 2024 WL 3580662, at *3. Plaintiff fails to provide any non-conclusory facts plausibly suggesting that either the County of Bergen or Aramark Corp. adopted a specific policy or that there was a "well-settled" custom or pattern of similar constitutional violations causally linked to the food being served to Plaintiff and other inmates. In particular, the single incident involving the vermin and the bag of bread is insufficient by itself to make out a *Monell* claim. *See Fong*, 2024 WL 5074763, at *3 (noting that plaintiff failed to plead facts supporting her allegation that the city policymakers had knowledge of similar unlawful conduct in the past and failed to take action leading to decedent's injuries).

Accordingly, Plaintiff does not plead a plausible *Monell* claim against the County/Contractor Defendants.

### 3. The Due Process Claim

Conditions of confinement claims brought by pretrial detainees are considered under the Due Process Clause of the Fourteenth Amendment. *See E.D. v. Sharkey*, 928 F.3d 299, 306–07

13

(3d Cir. 2019). The Supreme Court has stated that "[i]n evaluating whether a pretrial detainee's conditions of confinement violate his substantive due process rights, 'the proper inquiry is whether those conditions amount to punishment of the detainee.'" *Umarbaev v. Lowe*, No. 20-0413, 2020 WL 1814157, at *6 (M.D. Pa. Apr. 9, 2020) (quoting *Bell*, 441 U.S. at 535); *see also Stevenson v. Carroll*, 495 F.3d 62, 67 (3d Cir. 2007).

"Unconstitutional punishment typically includes both objective and subjective components." *Stevenson*, 495 F.3d at 68. "[T]he objective component requires an inquiry into whether the deprivation was sufficiently serious and the subjective component asks whether the officials acted with a sufficiently culpable state of mind." *Id.* (internal quotation marks and alterations omitted). Only conditions of confinement that "cause [detainees] to endure genuine privations and hardship over an extended period of time" violate due process. *Bell*, 441 U.S. at 542. Furthermore, "a 'particular measure amounts to punishment when there is a showing of express intent to punish on the part of detention facility officials, when the restriction or condition is not rationally related to a legitimate non-punitive government purpose, or when the restriction is excessive in light of that purpose.'" *Bistrian v. Levi*, 696 F.3d 352, 373 (3d Cir. 2012) (quoting *Stevenson*, 495 F.3d at 68); *Steele v. Cicchi*, 855 F.3d 494, 504 (3d Cir. 2017). The totality of the circumstances should be considered in evaluating a pretrial detainee's claim of unconstitutional punishment. *See Bistrian*, 696 F.3d at 373.

Allegations regarding inadequate nutrition fall under the broader category of conditions of confinement claims. *See Zelaya v. Ortiz*, No. 21-14956, 2024 WL 261277, at *2 (D.N.J. Jan. 24, 2024). "[I]nmates must be served 'nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger' to their health and well being." *Id.* (quoting *Duran v. Merline*, 923 F. Supp. 2d 702, 720 (D.N.J. 2013)). "[C]orrections officials may not be

held liable unless the inmate shows both an objective component (that the deprivation was sufficiently serious) and a subjective component (that the officials acted with a sufficiently culpable state of mind)." *Id.* (quoting *Duran*, 923 F. Supp. 2d at 719–20).

Here, Plaintiff does not allege sufficient facts for the Court to infer that either requirement has been satisfied. With respect to the objective prong, Plaintiff alleges that vermin had eaten through a bag into the bread (Compl. at 2); however, a single or occasional incident involving contaminated or spoiled food does not amount to a sufficiently serious deprivation in violation of the Due Process Clause of the Fourteenth Amendment. *See, e.g.*, *Duran*, 923 F. Supp. 2d at 720; *Nickles v. Taylor*, No. 09-0557, 2010 WL 1949447, at *5 (D.N.J. May 14, 2010). Furthermore, Plaintiff's bald, conclusory allegations regarding proper or equal nutritional value and failure to follow the specifications of the menu and OSHA rules and regulations are unsupported by alleged facts. *See Iqbal*, 556 U.S. at 678 (stating that naked assertions devoid of further factual enhancement are insufficient). Specifically, Plaintiff does not explain how, and to what extent, he was denied the proper nutritional value in his meals or identify the menu guidelines and OSHA regulations that were allegedly not followed. *See Pritchett v. Camden Cnty. Corr. Facility*, No. 16-08241, 2018 WL 1522713, at *7 (D.N.J. Mar. 28, 2018) ("Without facts demonstrating substantial nutritional deprivation, such as how frequently the alleged substandard food was served, a description of the manner the food offered to Plaintiff was in fact inferior, what other meal options were offered, and for how long during his dates of confinement the Plaintiff was arguably compelled to eat this food, this Court cannot find that Plaintiff has stated a cognizable constitutional claim."). Furthermore, courts have refused to equate a failure to meet national nutritional guidelines with a violation of the objective prong of a "conditions of confinement" claim. *See Skelton v. Branganza*, No. 19-18597, 2024 WL 939688, at *4 (D.N.J. Mar. 4, 2024).

15

Apart from his bald assertion that he "constantly" observed the "disrespectful" placement of food trays on the floor, Plaintiff "does not allege facts sufficient to plausibly show whether dirty food trays [or serving hot food cold] occurred at each . . . mealtime or that such condition[s] occurred frequently during the time of his confinement at [the county jail]." *David v. Camden Cnty. Corr. Facility*, No. 16-7628, 2018 WL 1522709, at *5 (D.N.J. Mar. 27, 2018) (citation omitted); *see also Millhouse v. Arbasak*, 373 F. App'x 135, 138 (3d Cir. 2010) (per curiam) ("Also meritless is Millhouse's claim that a prison worker placed his food tray on the floor." (citing *Ramos v. Lamm*, 639 F.2d 558, 570–71 (10th Cir. 1980)); *Duran*, 923 F. Supp. 2d at 720 (stating that the mere fact that the food is unvaried or cold does not give rise to a constitutional violation).

In any event, Plaintiff does not allege that he, or any other inmate at the facility, were made ill or otherwise physically injured by the food they were served. Without facts regarding "the particular physical injuries (if any) that the contested food posed to inmate health and well-being, or the injury (if any) Plaintiff actually sustained from such food (beyond more than temporary discomfort or dislike), the Food Claim constitutionally falls short." *David*, 2018 WL 1522709, at *5; *see also Pritchett*, 2018 WL 1522713, at *7 (rejecting claim because, inter alia, plaintiff failed to allege facts regarding the injury, if any, he sustained from the food).

Furthermore, Plaintiff must establish that officials responsible for acted with deliberate indifference to his needs, "meaning that they were subjectively aware of the alleged conditions and failed to reasonably respond to them." *David*, 2018 WL 1522709, at *6 (citing *Duran*, 923 F. Supp. 2d at 721). However, Plaintiff does not allege any facts raising the reasonable inference that Defendants, the responsible officials, were subjectively aware that the food was unsanitary or that they failed to reasonably respond and continued to serve unsanitary food to him. In fact, as this Court has already indicated, *see supra* Section III.B.ii.1, Plaintiff does not plausibly allege what,

if, any role, the defendant municipal and corporate officials and employees played in the food service process, what they knew about the alleged food-related issues, and what they did, or did not do, with respect to these issues. *See David*, 2018 WL 1522709, at *6 ("Plaintiff has not offered any facts from which this Court can infer deliberate indifference by anyone at CCCF with respect to the dirty food trays.").

Accordingly, the Court concludes that Plaintiff does not provide sufficient factual content permitting the Court to find that either the objective or subjective components of a due process "conditions of confinement" claim have been met, and therefore Plaintiff has failed to plausibly state a Fourteenth Amendment due process claim.

### 4.  The Free Exercise Claim

Plaintiff further indicates that his "freedom to practice my religious beliefs" was infringed because "[t]he food is not Halal" and, "as a Muslim I am not supposed to eat food that is altered chemically."  (Compl. at 2 & 4).  Inmates retain protections afforded by the Free Exercise Clause of the First Amendment.  *See O'Lone v. Shabazz*, 482 U.S. 342, 348 (1987).  "Nevertheless, the fact of incarceration and the valid penological objectives of deterrence of crime, rehabilitation of prisoners, and institutional security justify limitations on the exercise of constitutional rights by inmates."  *Johnson v. McGill*, No. 24-6910, 2024 WL 4511981, at *3 (D.N.J. Oct. 16, 2024) (quoting *DeHart v. Horn*, 227 F.3d 47, 51 (3d Cir. 2000)).  To establish a free exercise violation, the inmate must first show that a prison practice or policy has substantially burdened the practice of his religion.  *See Long v. Somerset Cnty. Jail*, No. 18-13007, 2019 WL 1026272, at *3 (D.N.J. Mar. 4, 2019).  Only sincerely held beliefs that are religious in nature are entitled to protection. *See id.*  Once the plaintiff has established that they have a sincerely held religious brief, they must "demonstrate that the challenged prison practice or policy (which allegedly infringes on that

17

religious belief) is not reasonably related to penological interests set forth in *Turner v. Safley*, 482

U.S. 78 (1987)."[4]  *Id.*  (citing *DeHart*, 227 F.3d at 51).

Here, Plaintiff fails to allege a plausible free exercise claim.  He provides no factual content

to support his bald and vague statements regarding chemical alterations and non-Halal food.

According to the Third Circuit, an immigration detainee's allegation that he did not receive Halal

meals was insufficient under *Iqbal* because "he did not allege that he was denied vegetarian meals

or otherwise prevented from practicing his religion."  *Adekoya v. Chertoff*, 431 F. App'x 85, 88

(3d Cir. June 21, 2011) (per curiam); *see also Abdul-Aziz v. Lanigan*, No. 17-2806, 2018 WL

1069420, at *8 (D.N.J. Feb. 26, 2018) (stating that Third Circuit has repeatedly found that

providing only vegetarian meals to accommodate Halal-observant inmates is constitutionally

acceptable).  Plaintiff likewise fails to allege facts indicating that he was denied an adequate

alternative or otherwise prevented from exercising his religion, nor does Plaintiff allege that or

how the prison practice or policy substantially burdened the practice of his religion.  Therefore,

Plaintiff fails to state a free exercise claim because he fails to plausibly allege how Defendants

purportedly violated his rights under the Free Exercise Clause of the First Amendment.

### 5.  The Equal Protection Claim

Plaintiff indicates that he was not "treated equally" with respect to receiving proper or

equal nutritional value in his meals.  (Compl. at 3).  A plaintiff states a valid equal protection claim

when he is either (i) a member of a protected class and was treated differently from members of

an unprotected class, or (ii) he belongs to a "class of one" and was treated differently from others

similarly situated without any rational basis for the difference in treatment.  *See Vill. of*

---

[4]      The *Turner* standard has been applied to religious exercise claims by pretrial detainees. *See Bullock v. Cohen*,
No.17-271, 2018 WL 2411604, at *10 n.4 (D.N.J. May 29, 2018) (citing *Tirone v. Trella*, No. 03-257, 2007 WL
3170098, at *7 (D.N.J. Oct. 29, 2007)).

*Willowbrook v. Olech*, 528 U.S. 562, 563 (2000).  Plaintiff fails to allege disparate treatment based on religion or any other protected ground.  *See Adekoya*, 431 F. App'x at 88 ("Likewise, we agree that Adekoya failed to allege an Equal Protection Clause violation.  Although he explained that Jewish inmates at BCJ received kosher meals, he did not allege that these kosher meals contain meat or that they were appreciably different from the meals he was provided.").  Plaintiff also does not allege facts indicating that he was intentionally treated differently from other similarly situated individuals as required to plead a "class of one" claim.  *Vill. of Willowbrook*, 528 U.S. at 564.

Therefore, Plaintiff fails to state an Equal Protection claim.

### 6.  Section 1997e(e)

Section 1997e, entitled "Limitation on recovery," provides that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury."  42 U.S.C. § 1997e(e).  The Third Circuit has interpreted Section 1997e(e) to bar recovery of compensatory damages in such suits in the absence of a showing of physical injury.  *See Allah v. Al-Hafeez*, 226 F.3d 247, 250 (3d Cir. 2000) (holding that Section 1997e(e) barred First Amendment free exercise claims to the extent they sought compensatory damages because the plaintiff made no showing of a physical injury).

Here, Plaintiff seeks monetary "compensation."  (Compl. at 4).  However, the Complaint contains no allegations of any physical injury.  Accordingly, the Court **DISMISSES** *without prejudice* Plaintiff's Section 1983 claims to the extent that they seek compensatory damages.

## IV.    CONCLUSION

For the reasons stated above, the Court **DISMISSES** *with prejudice* Plaintiff's OSHA claims against all Defendants as well as his Section 1983 claims against Bergen County

Department of Correction, Bergen County Adult Corrections Center, and the NJDOC, and the Court **DISMISSES** *without prejudice* Plaintiff's Section 1983 claims against the Individual Defendants and the County/Contractor Defendants.  An appropriate Order follows.


Dated: **February 18, 2025**                                        *s/ Esther Salas*
                                                                    **Esther Salas, U.S.D.J.**